J-A29045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STANLEY E. RIGGLE | : | |
| | : | |
| Appellant | : | No. 579 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 28, 2025
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-SA-0000035-2024

BEFORE: OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: March 17, 2026**

Appellant, Stanley E. Riggle, appeals from the judgment of sentence imposed following his bench trial conviction for summary harassment. We affirm.

The Commonwealth filed two criminal complaints against Appellant, both of which related to allegations he harassed his neighbor, Robert Hahn. A magistrate district judge found Appellant guilty at both dockets, and Appellant thereafter filed timely notices of appeal to the Court of Common Pleas of Armstrong County. *See* Pa.R.Crim.P. 460. The trial court held separate *de novo* trials, Pa.R.Crim.P. 462, and the Commonwealth presented the following testimony regarding the summary harassment charge at issue herein.

Hahn testified that approximately two to three days before the incident, he had recorded "a video of two people riding their horses on [Appellant's]

property next to [his] fence line." N.T., 4/28/25, at 25. He did not know these individuals and stated they appeared to be "[y]oung adults, maybe high school" age. *Id.* at 26. On October 2, 2024, Hahn and his wife went on a walk and saw Appellant and his wife approach on a four-wheeler. *Id.* at 12. The Hahns continued their walk, and saw Appellant stop the vehicle. *Id.* At that time, "[t]hey … started to yell at us. They said they had something to say." *Id.* at 13. The Riggles "were upset" about Hahn's video, and Appellant "started calling [him] a pedophile." *Id.* Hahn and his wife "continued on [their] walk" instead of engaging. *Id.* However, the Riggles began following the Hahns on the four-wheeler, with Appellant driving parallel to their path. *Id.* at 14, 22. Appellant "continued saying disparaging remarks," such as calling Hahn "a pedophile." *Id.* at 14. Appellant then "sa[id] very clearly[,] 'Wait until your neighbors find out you're a pedophile. We have ways of dealing with you.'" *Id.* at 21.

The trial court found Appellant guilty of harassment for the above conduct. Appellant filed a timely notice of appeal.[1] Appellant complied with

_____

[1] Appellant filed the notice of appeal at docket CP-03-SA-0000034-2024, which corresponds to the other complaint and for which the trial court orally pronounced Appellant not guilty. However, the trial court mistakenly transposed the docket numbers on its written orders. *See* Order, 6/28/25, at 1 (clarifying that "the case numbers on the two orders were inadvertently switched"). The June 28 order corrected the mistake, and therefore the guilty verdict is now properly docketed at CP-03-SA-0000035-2024.

Because Appellant filed his notice of appeal in a timely fashion, we have amended the caption to reflect the correct docket number. *See* Pa.R.A.P.
*(Footnote Continued Next Page)*

the order to file a Pa.R.A.P. 1925(b) statement, and the trial court issued its

Rule 1925(a) opinion. Appellant raises four issues for our review:

> 1. Did the trial court err as a matter of law in finding that [Appellant] had an intent to annoy, harass, or alarm … Hahn pursuant to 18 Pa. C.S. § 2709(3)?
>
> 2. Did the trial court err as a matter of law in finding that [Appellant] acted with no legitimate purpose pursuant to 18 Pa. C.S. § 2709(3)?
>
> 3. Did the trial court err as a matter of law in finding that [Appellant] engaged in a course of conduct pursuant to 18 Pa. C.S. § 2709(3)?
>
> 4. Did the trial court err as a matter of law in finding that [Appellant] was not validly exercising his First Amendment right to free speech?

Appellant's Brief at 1.

Appellant's first three issues pertain to the sufficiency of the evidence.

Our standard of review is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

---

902(a) (requiring a notice of appeal to be filed "in each docket in which the order has been entered"); *id.* (b) (stating that, except for failures to file a notice of appeal in a timely manner, the "failure of a party to comply with the requirements stated in subdivision (a) does not affect the validity of the appeal, but the appeal is subject to such action as the appellate court deems appropriate"). We deem it appropriate to amend the caption to correspond to the correct docket as reflected in the trial court's June 28, 2025 order.

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bernarsky*, 348 A.3d 304, 319–20 (Pa. Super. 2025) (quoting *Commonwealth v. Furness*, 153 A.3d 397, 401 (Pa. Super. 2016)). Because sufficiency of the evidence presents a question of law, our standard of review is *de novo*. *Id.*

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person ... engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]" 18 Pa.C.S. § 2709(a)(3). Each of Appellant's first three issues addresses a separate component of this statute.

In his first claim, Appellant argues that the Commonwealth failed to present sufficient evidence that he acted with the requisite intent. Appellant alleges that the Commonwealth's evidence "proved, through the testimony of … Hahn, that [Appellant] was upset about the video recording of his minor granddaughter. Additionally, the Commonwealth established that [Appellant] had the intent to speak with … Hahn about the video recording." Appellant's Brief at 10. Appellant argues that he "sought to address a perceived wrong, and … Hahn refused to address the matter, leading [Appellant] to express his frustration in name calling." *Id.* at 11.

"This [s]ection requires the fact finder to infer a specific intent, and it specifies the conduct must be of a non-legitimate nature—conduct which is not constitutionally protected." ***Commonwealth v. Battaglia***, 725 A.2d 192 (Pa. Super. 1999). We agree that the context is relevant to assessing specific intent. For example, in ***Battaglia***, a police officer observed Battaglia blowing leaves onto a street and instructed Battaglia to clean them up. ***Id.*** at 193. "Eventually, [Battaglia] stated he was going to 'fucking sue the police' for bothering him[.]" ***Id.*** at 193. The officer arrested Battaglia and, at the police station, Battaglia "touched [the officer's] hand while grabbing a pen from the officer[.]" ***Id.*** Finally, Battaglia allegedly "did not follow" directions. ***Id.*** at 194.

The citation charging Battaglia with harassment listed all three acts as independently justifying harassment. We determined that the comment was insufficient "because the evidence did not prove [the] remark was made with a specific intent to harass. In its obvious context, the remark was a response to perceived harassment; whether a justifiable perception or not, the context was responsive, not provocative." ***Id.*** at 194. Similarly, grabbing the pen was insufficient. "The officer may have been annoyed in fact, but there is no evidence, in the context of the situation or otherwise, to show appellant's purpose was to cause annoyance." ***Id.*** at 195.[2] Finally, "not following a direction … is not harassment." ***Id.***

---

[2] The statute in effect at that time required proof that the acts actually caused annoyance or alarm.

We accept that the initial encounter between Appellant and Hahn would not constitute harassment. Hahn testified that the incident began when the Riggles "turned off their four-wheeler, [and] started to yell at us. They said they had something to say." N.T., 4/28/25, at 13. By all accounts, the initial context involved a neighborly dispute, and Appellant was free to criticize Hahn and attempt to strike up a conversation to address his complaints.

However, the context of the encounter almost immediately changed, as Appellant accused Hahn of pedophilia. Moreover, the Hahns had no obligation to participate or respond to Appellant's comments.[3] At that juncture, Hahn indicated a desire to be left alone, and he and his wife began walking in the opposite direction. Appellant chose to "turn the four-wheeler around, [and] began driving … parallel" to the Hahns. *Id.* at 21. Appellant continued to berate Hahn, closing with the comment, "Wait until your neighbors find out you're a pedophile. We have ways of dealing with you." *Id.*

We conclude that the trial court, sitting as fact-finder, could rationally infer that Appellant demonstrated a specific intent to harass by continuing to follow, insult, and obliquely threaten Hahn. "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa. Super.2002). Appellant's decision to pester Hahn

---

[3] In Appellant's second issue he concedes that "Hahn refused to engage in a conversation" about the recordings. Appellant's Brief at 12.

after he declined to discuss their dispute constituted sufficient evidence of a specific intent to harass. Appellant's first issue therefore merits no relief.

Appellant's second claim avers that the Commonwealth failed to show that he "acted with no legitimate purpose." **See** Appellant's Brief at 11-12. This argument is essentially a variation of the first claim, as he asserts his conduct was done for the "legitimate purpose of discussing ... Hahn's video recording of [Appellant's] minor granddaughter. As a grandfather, [Appellant] has an interest in the wellbeing of his granddaughter."

In **Commonwealth v. Duda**, 831 A.2d 728 (Pa. Super. 2003), Duda was convicted of the same harassment subsection at issue here. Duda had recently separated from his wife and, per an agreement, took the couple's children to his wife's home for a visit. **Id.** at 730. Upon arrival, Duda refused to leave the children, as he believed that his wife's boyfriend was present. **Id.** Duda then called his wife and "yelled and screamed obscenities at her. He also threatened to kill her, and vowed that she would never see her children again. After Mrs. Duda hung up the phone, [Duda] called again making the same threats." **Id.**

Duda argued that "the calls served the legitimate purpose of discussing visitation rights with Mrs. Duda." **Id.** at 731. We disposed of this argument in short order: "However, given [Duda]'s use of obscenities and threats during the calls, one could not conclude that [Duda] was serving a legitimate purpose by making the calls." **Id.**

As in **Duda**, the manner in which Appellant chose to deliver his message circumstantially establishes that there was no legitimate purpose served by his communications and conduct. Appellant argues that he "has an interest in the wellbeing of his granddaughter," but he fails to explain how repeated accusations of pedophilia and threats to involve third parties advances a good faith conversation regarding the video.[4] We find that the Commonwealth presented sufficient evidence for the fact-finder to conclude Appellant's conduct was intended to harass and did not serve a legitimate purpose.

Appellant's third claim alleges that the Commonwealth failed to prove a "course of conduct," which the statute defines as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." Appellant's Brief at 12 (quoting 18 Pa.C.S. § 2709(f)). As is evident from this text, "a single act will not constitute a course of conduct under the definition of harassment." **Lutes**, 793 A.2d at 961 (citation omitted).

Appellant submits this incident does not involve a course of conduct because "[t]here is no evidence to suggest that [Appellant] ended the interaction with … Hahn and returned for a second interaction, or that the interaction was prolonged long enough to constitute a course of conduct." Appellant's Brief at 13-14.

---

[4] Hahn testified that he did not know the individuals in the video. Appellant did not testify, and his argument therefore assumes facts not in evidence.

It is true that Appellant did not end the interaction; however, Hahn did. Under Appellant's logic, a "course of conduct" cannot be established unless the aggressor voluntarily ends the encounter and then reengages. However, the analysis includes whether the victim tried to avoid the aggressor. If so, repeated attempts to reengage the victim qualifies as a course of conduct. *See Lutes*, 793 A.2d at 961 (finding evidence sufficient to support a course of conduct where Lutes approached a government employee and blocked his path, insulted him, and threatened to punch the employee in the mouth despite fact he repeatedly tried to avoid confrontation). Because the evidence established multiple instances of harassing conduct, the Commonwealth presented sufficient evidence to meet this statutory requirement.

Appellant's final claim is that his conviction cannot stand under the First Amendment to the United States Constitution, as he "validly exercised his First Amendment rights." Appellant's Brief at 15.[5]

Appellant appears to make an as-applied challenge, which addresses whether "application of the statute under the facts and circumstances of [the] case violates [Appellant's] First Amendment rights." *Commonwealth v. Papp*, 305 A.3d 62, 77 (Pa. Super. 2023). Appellant cites individual

---

[5] The Commonwealth argues that this claim is waived, stating that Appellant failed to "make a First Amendment argument at the trial court level[.]" Commonwealth's Brief at 8. Appellant did not argue the claim at trial, but did raise the allegation in his Rule 1925 statement. *See* Pa.R.A.P. 1925(b) Statement, 6/20/25, ¶ 4. We accept, without deciding, that a First Amendment as-applied challenge need not be raised at trial.

components of his comments, arguing that each fails to meet any exception to the First Amendment's bar against penalizing speech.

"[T]he government generally lacks the authority to restrict expression based on its message, topic, ideas, or content." *Commonwealth v. Knox*, 190 A.3d 1146, 1154 (Pa. 2018). There are exceptions to this principle. *See generally Interest of J.J.M.*, 265 A.3d 246, 254 (Pa. 2021) (discussing the various exceptions, including, as relevant here, "fighting words," "true threats," and defamation). Appellant argues that his speech did not satisfy the criteria for these exceptions.

Had the Commonwealth punished Appellant on the theory he issued a "true threat" by referencing third parties to "deal with" Hahn, or that an accusation of pedophilia constitutes "fighting words" or was defamatory, we would have to analyze whether the speech itself could be punished. However, Appellant's framework is mistaken, as the Commonwealth punished Appellant for his harassing conduct, not the content of his speech. This point is demonstrated by our analysis in *Papp*, which involved an as-applied challenge to a conviction under a separate section of the harassment statute.[6] Papp, a veterinarian, was prosecuted for sending multiple Facebook messages to one of her clients, accusing the client of animal abuse. *Papp*, 305 A.3d at 67-68. The messages persisted despite the victim's requests for Papp to end all

---

[6] 18 Pa.C.S. § 2709(a)(7) ("A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . . communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6).").

communications. *Id.* at 67. Papp argued that her harassment conviction was based on the content of the speech, because the fact-finder knew what Papp said to the victim. *Id.* at 77. Papp further argued that the Commonwealth relied on the alleged "outlandish" nature of the messages to establish harassment, thereby basing the conviction on the content of the speech. *Id.* We disagreed.

> [H]ere, the content of [Papp's] messages was relevant for two purposes: (1) to determine if the messages were intended as legitimate communications; and (2) to determine if [Papp's] intent was to harass, alarm, or annoy [the v]ictim. The statute itself, however, is content-neutral. [Papp] was not guilty of harassment simply because [the v]ictim disapproved of her messages or did not agree with her allegations of abuse. She was convicted because the jury found she repeatedly sent messages to [the v]ictim, for which she had no legitimate purpose, and did so with the intent to harass him.

*Papp*, 305 A.3d at 78.

This analysis readily extends to Section 2709(a)(3), which likewise does not address the content of the speech. *Compare* 18 Pa.C.S. § 2709(a)(4) (criminalizing communication of "lewd, lascivious, threatening or obscene words, language, drawings or caricatures"). Because Appellant's conviction was predicated on the specific intent to harass Hahn by repeatedly engaging in acts which served no legitimate purpose, his conviction was based on his harassing conduct and not the content of his speech.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/17/2026